The UNITED STATES of America, Plaintiff-Appellee,

v.

Joseph IACULLO, Defendant-Appellant.
No. 11496.

United States Court of Appeals Seventh Circuit.
June 28, 1955.

Maurice J. Walsh, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Chicago, Ill. (Edward J. Calihan, Jr., and John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel), for appellee.

FINNEGAN, Circuit Judge.

After judgment of conviction for various violations of statutory provisions regulating narcotics and for conspiracy in connection therewith, defendant Iacullo was sentenced to five years in prison and fined $100. The district judge who tried Iacullo, without a jury, thereafter denied him bail. His application for enlargement on bail pending appeal[1] followed and being docketed as an emergency matter I entertained it[2] under Rule 46(a) (2) of the Rules of Criminal Procedure providing:

> "Bail may be allowed pending appeal * * * *only* if it appears that the case involves a *substantial* question which should be determined by the appellate court. Bail *may* be allowed by the trial judge or by the appellate court or by *any judge thereof* * * *."* (Italics added.)

I heard oral arguments in this matter and requested memoranda of points and authorities from both sides. This approach crystallized the core question cogently put by Mr. Justice Douglas, in Herzog v. United States, 75 S.Ct. 349, 350:

> "The construction of the words 'substantial question' is itself a substantial question. It obviously does not mean a decision on the merits,

for Rule 46(a) (2) defines the question as one 'which should be determined' on appeal. * * *

> "When, therefore, the issue is whether a 'substantial question' is presented within the meaning of Rule 46(a) (2), the first consideration is the *soundness of the errors alleged."* (Italics added.)

Indeed it is after making that basic evaluation I am able to distinguish the Herzog case, where bail was allowed, from the one before me. My reasons for denying bail to Iacullo were studied in the setting of the Eighth Amendment; Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 and with an awareness that the Herzog case unqualifiedly states that: "Doubts whether it (bail) should be granted or denied should always be resolved in favor of the defendant", citing Mr. Justice Butler in United States v. Motlow, 7 Cir., 1926, 10 F.2d 657, 663.

Yet a passage from Williamson v. United States, 2 Cir., 1950, 184 F.2d 280, 281, written by Mr. Justice Jackson as Circuit Justice, fairly epitomizes the rest of the backdrop against which defendant's application must be examined:

> "To remain at large, under bond, after conviction and until the courts complete the process of settling substantial questions which underlie the determination of guilt cannot be demanded as a matter of right. It rests in sound judicial discretion."

While Justice Jackson relegated the following material to marginal note, Id., 281, status I reproduce it here as part of the text of this opinion because of the obvious impact on the question pending before me:

> "I cannot accept this view that presence of a substantial question makes bail mandatory. * * * The unpublished history of the rule in the files of this Court shows that the Advisory Committee submitted it to this Court with this language in the

---

1. Notice of appeal from the judgment entered below June 21, 1955, was docketed in this court June 21, 1955.

2. See also: Fed.R.Crim.Proc., Rule 38(b) and (c), 18 U.S.C.A.

first line, 'Bail *shall* be allowed * * *.' * * * By letter of December 21, 1944, Chief Justice Stone returned the proposed rules, stating that the word 'shall' should be changed to 'may.' It is apparent that the language of the rule was not casual or loose and *that the basis for claiming bail as a matter of right was deliberately eliminated.* Although Rule 46 was a restatement of the existing law, the third sentence is new. In a note attached to an early draft, the following comment was made: 'The *discretionary power* to admit to bail *pending appeal* is made explicit in the new closing sentence,' citing Rossi v. United States, 8 Cir., 1926, 11 F.2d 264.

"Further, it is to be noted that 'may' is used three times in the rule, once in each of the three sentences. I should hardly suspect that this Court used the word with inconsistent meanings—twice to mean 'must' an (*sic*) once to mean 'may.' The only consistent meaning is that 'may' means just that; the judge is empowered to use his own best judgment as to whether a defendant should be free on bail." (Italicization of "shall" appears in the original marginal note 4; all other italics are added.)

That reasoning, whether or not it be *dictum* because Williamson hinged on revocation of bail, is sound enough for guiding interpretation of Rule 46(a) (2).

Johnson v. United States, 9 Cir., 1954, 218 F.2d 578, 579, is consonant with the basic principle already outlined in this respect:

"It is important to keep in mind that Rule 46(a) (2) is not a mandate for the general allowance of bail on appeal. The Rule is restrictive in its language. It provides for the allowance of bail pending appeal *only* when it appears that there is a substantial question in the case which should be determined by the Appellate Court. The burden necessarily rests upon the appellant to show not only that there is a substantial question involved but *also* that it *should* be determined in the particular case. That the lower court committed some error in ruling upon the admission of evidence or in instructions to the jury, is not sufficient. * * * The only material question is: As against the whole case, do the alleged errors or mistakes present a question of such substance as needs decision by the *reviewing* court?" (Italics as in reported opinion.)

All that has been thus far noted could well be implemented with this additional statement made by Mr. Justice Frankfurter when disposing of Albanese v. United States, 75 S.Ct. 211:

"I cannot say that the questions which petitioner proposes to raise on appeal are frivolous. But even though his grounds of appeal be not frivolous, it is not for me to overrule the discretion exercised by the Court of Appeals in denying bail unless the record reveals a clear abuse of discretion by that court."

■ While the words "substantial question" seemingly reflect intractability of any formula furnishing definiteness of content for all factors involved in every instance of post-conviction bail, they are consonant with permissive, rather than mandatory bail at such a stage in criminal procedure. Though the formulary contained in Rule 46(a) (2) produces inevitable variants when applied in specific cases, one aspect, though in part a negative one, is important. D'Aquino v. United States, 9 Cir., 1950, 180 F.2d 271, 272, reflects that facet, described by Mr. Justice Douglas, speaking as Circuit Justice:

"The *question* of the *guilt or innocence* of an appellant is *not* an issue on application for bail. It has long been a principle of federal law that bail after conviction and pending appeal is a remedy normally available to a prisoner. * * *

(citing) \* \* \* The existence of power to grant bail is, indeed, essential for the protection of the right to appeal. Otherwise a short sentence might be served before the appellate court could set aside the judgment of conviction for infirmities in the trial. An effective right to appeal would then be lost." (Italics supplied.)

I have already noted the observations of Mr. Justice Butler when sitting as Circuit Justice in our circuit, and whose holdings have been cited in both Herzog and D'Aquino applications for bail. Certainly if there is a "substantial question" embedded in Iacullo's appeal he is entitled to bail though I might vote to affirm his judgment of conviction on the merits (if I were on the panel). The test is whether his questions are substantial at this stage and thereby come within the ambit of Rule 46(a) (2). That is my approach in ascertaining the status of these points now urged on Iacullo's behalf:

"1. Was the evidence sufficient to sustain the finding of guilty?

"2. Did the Court err in permitting introduction and consideration of hearsay statements of deceased persons to establish conspiracy?

"3. Did the Court err in denying a speedy trial on prior indictments for offenses charged in counts of this indictment tried; and in granting a continuance to the Government over objection for the purpose of securing a conspiracy indictment so that offenses not alleged and committed by others might be admitted in evidence?

"4. Did the Court err in receiving and considering as evidence, testimony concerning occurrences long after any alleged objects of the conspiracy had terminated or been achieved?

"5. Did the Court err in admitting and considering evidence of fingerprints on newspapers, which were not the containers of narcotics, where there was no evidence of how or when they arrived on the newspapers, and there was no other evidence of the defendant's connection with the narcotics involved?

"6. Did the Court err in denying separate trials on the various charges which had theretofore been separately indicted?

"7. Did the Court improperly permit the misuse of the conspiracy charge so as to receive and consider inadmissible hearsay conversations and statements of dead persons and inadmissible evidence of events outside the indictment and thus, deny a fair trial?

"8. Was the fingerprint exemplar procured from the defendant in violation of his right against self-incrimination and for the special purpose of creating an exhibit and evidence to be used against him, rather than for identification? Was it thus admissible?

"9. Where there is no evidence of the defendant's connection with the offenses other than fingerprints on newspapers which are not immediate containers of narcotics can the trial Judge infer possession to have been found in the defendant, or infer knowledge of the existence of the narcotics, or infer the intent to commit the offenses alleged?

"It is further respectfully represented that the evidence and statements of the prosecutor show the defendant as a first offender, who has been sentenced far more heavily than co-defendants who plead guilty, and for one of whom this was a third conviction.

"It is further represented that the prosecution of the appeal will be unduly hampered unless the defendant is enlarged on bail so that he will be free to consult with counsel. The defendant has heretofore been enlarged in this case on bail in the sum

of Six Thousand Dollars ($6,000.00) and at all times has complied with the conditions of bail."

Defense counsel with approval of the government, has supplied me with a stenographic transcript of various excerpts of the proceedings had below. Yet I again stress the fact I am not prejudging Iacullo's case on the merits and also point out that my disposition here is predicated, necessarily, on an incomplete record. But I have enough before me to arrive at an opinion on whether defendant's questions are substantial or fairly debatable.

█ After canvassing the excerpt of proceedings and examining counsels' memoranda, I am of the opinion that the errors asserted as a basis for allowing enlargement on bail are unsound and insubstantial. That we have reversed convictions found in jury-waived trials, United States v. Litberg, 7 Cir., 1949, 175 F.2d 20 cited by defendant, is hardly the pole-star here. United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, pivots on a search and seizure question rather than the proposition for which defendant makes use of it. One short passage from defendant's memorandum quickly dispels any comparability between the Di Re facts and this one, viz: " * * * the Government's evidence tended to show that Iacullo * * * was in an automobile with Anthony Sperna (a defendant) on July 23, 1953, when Sperna tossed an envelope or package containing narcotics into the automobile of undercover Government agent. This Government agent had theretofore arranged a purchase of narcotics from one Frank Coduto, a deceased (defendant slain after indictments returned) person named as a member of the conspiracy." (Def. memo, p. 3.)

Virtually all of the excerpts of proceedings contain parol evidence given by government witness Harry V. Mattera, a Treasury Enforcement Officer assigned to the Federal Bureau of Narcotics, and a portion of his testimony which follows is relevant to that statement just quoted:

"Q. Tell the Court in your own words what transpired from the time you first saw the Defendant Iacullo that evening. A. The car in which they were riding pulled up parallel to my automobile, which was parked on the lot. I commenced walking across the street. The car backed up and began pulling out of the lot. At that time, the car stopped momentarily to permit pedestrians to cross.

"Q. How far were you from the car at that point? A. Approximately ten feet.

"Q. Did you observe the Defendant Joseph Iacullo? A. Yes, I did.

"Q. He is the same Joseph Iacullo that you have pointed out here in court this morning? A. Yes, he is.

"Q. What, if anything, next occurred? A. I went to my automobile.

"Q. Tell the Court in your own words what, if anything, happened? A. I examined the interior of my automobile, came out of the automobile, picked up a package from the ground, placed it in my pocket, started my car, and drove out of the locality.

"The Court: Where was the package picked up?

"The Witness: Outside of my car, your Honor.

"The Court: You mean on the ground?

"The Witness: Yes, sir.

"The Court: Was it next to your car?

"The Witness: Yes, sir."

What Judge Lindley said in United States v. Pisano, 7 Cir., 1951, 193 F.2d 361, 365, goes far toward cutting ground from under this defendant's contentions concerning presence of "his fingerprints on (1) an old sheet of newspaper which

enclosed a package of narcotics sold by others to an agent of the Government and (2) on the sports page of the Chicago Tribune which was used by another to conceal the transfer of a package of narcotics" (Def. Memo, p. 6). United States v. Moloney, 7 Cir., 1952, 200 F.2d 344, is unpersuasive, despite defendant's reliance on it, because that case reflects facts wholly unlike Iacullo's situation—even on the capsuled version of the evidence before me.

I am now aware that defendant is 36 years of age, married and the father of two children; that he suffers from chronic sinusitis; that he has no prior criminal record; that he testified in his own behalf and denied any knowledge or participation in the narcotic transactions.

██ Iacullo was found guilty by the district judge on several counts and it is necessary, then, for defendant to show a substantial question existed as to each of them. Ex parte Cohen, 9 Cir., 1951, 191 F.2d 300, 301. Though I have here left undetailed my treatment of each item asserted by defendant it is clear to me that none of his points warrant allowance of bail at this juncture.

In my opinion those points and questions raised here in Iacullo's behalf are neither new nor novel. Nor do I think, on the material before me, that his appeal will embrace unique facts which would prevent application of determinative precedents. Absent any of the aspects which Justices of the Supreme Court and Judges of Courts of Appeal have deemed indicative of, and as manifesting the presence of a "substantial question," I refuse bail in this matter.

But the Clerk of our court will be instructed to place this appeal on our docket so that oral arguments may be heard at the earliest possible date having regard, of course, to counsels' time for filing their respective briefs and record. If counsel desires to expedite this appeal that avenue still remains open.

Defendant's motion for enlargement on bail pending appeal is denied.